The last case for argument this morning is 19-1141, Ameranth v. Domino's Pizza. This is a case of Domino's Pizza v. Domino's Pizza, LLC. We're ready. Good morning. Good morning, Your Honors. Rich Weinblatt of Stimulus and Weinblatt on behalf of Ameranth. The District Court should be reversed for at least three reasons. First, the Court invalidated nine unasserted claims contrary to Fox Group v. Cree. Second, it violated Ninth Circuit law as an animal legal defense fund v. U.S. Food and Drug Administration by issuing summary judgment in the face of a disputed factual record regarding what was routine and conventional. Third, even though the appealed claims are presumed eligible under salesman and I4I, the Court did not view the facts in the light most favorable to Ameranth and ignored claim elements to rely on Apple v. Ameranth when deciding they are patent eligible. Can I start you off with, I think, the second point you made, which is the scope of the judge's ruling here on 101 and the claims that were covered? So included in those claims are 4, 5, and 14. As far as I can tell from what we have in the record, those claims were asserted against maybe some of the other defendants but not against Domino's. But I don't know that we have the complete record. What is your opinion? Only claims 1, 6, 9, 13, and 17 were asserted against Domino's. Well, originally the others were as well, right? You just were forced to pull back because the district court allowed you to only assert 5. So I know that. I'm asking you about particularly 4, 5, and 14 because my view of the record is that all the other stuff, at least at some point, was asserted against the defendant. But those claims, as far as I can tell, were asserted against another defendant but not this defendant. I'm just asking you. So if you go back in the earlier part of the case, that is correct. But Fox Group v. Cree, as well as Plantronics, and there's one other, tell us that at the time of the court's ruling, the subject matter jurisdiction is only on those claims. You're addressing a different question. The question was whether 4, 5, and 14 were ever asserted or there's any controversy between you and Domino's about those three claims. No, there's no controversy. And there never has been in the context of this case? No, Your Honor, not that I'm aware of. We'll confirm that with your colleague, but thank you. While we're working on clarifying claims, look at page 14 of your blue brief. Five lines up from the bottom, you say, which identified the asserted claims as claims 1, 6, 8, 13, and 17. And two lines up from the bottom, Amaranth asserted claims 1, 6, 9, 13, and 17. I'm sure there's an explanation for that other than it's a typographical error. Can you help me? Yes, it's not, Your Honor. It happens in several other places in the briefing. It jumps between claim 8 and claim 9. What's the story? So here's the story, and it's in the sentence first. The first sentence that you read, 1, 2, 3, 4, 5, 6 lines up. About six months later, Pizza Hut had filed a motion for summary judgment, which identified the asserted claims as claims 1, 6, 8, 13, and 17. So if you were to look at APPX 6398 and APPX 6421, that's Pizza Hut's motion for summary judgment, where they identified those asserted claims 1, 6, 8, 13, and 17. When Domino's sought to join Pizza Hut's then-mooted motion, Domino's pointed out to the district court that claim 8 was not asserted against Domino's, but claim 9 was. So at that point in time, the only claims that were then in front of Judge Sobral was 1, 6, 9, 13, and 17, because those were the only asserted claims against Domino's. Well, that's not quite true. Well, 9 is a dependent claim of 1. I'm sorry, 8 is the dependent claim of claim 1, and 9 is an independent claim. That's correct, Your Honor. So what it boils down to is the parties were on notice of the five asserted claims against Domino's prior to when Domino's filed its motion for summary judgment. The district court itself was on notice of the five claims that were asserted against Domino's. The case law from the federal circuit is clear that where the parties are on notice of what claims are asserted, there's only subject matter jurisdiction on those asserted claims. But your problem is if you look at 12-426, these claims, which are the subject of the judgment, other than 4, 5, and 14, were asserted against Domino's, right? The Domino's ordering system infringes at least claims and then it lists the claims, right? No. So the claims were dropped against Domino's. So there are only five. No, the local rules required you to limit it to five. The claims weren't dropped. If you look at the pretrial order, as well as the submissions to each other and the court, this is in line with Fox Root v. Cree, which is... Where does it say the claims were dropped? I mean, I know that they weren't included because of the local rule, but where is it that your client said that these claims were not infringed by Domino's? So APPX 10198. 10198? Yes. Causes of action to be tried. First paragraph. Whether Amaranth is proven by a preponderance of the evidence that Domino's directly infringes any of the asserted claims 1, 6, 9, 13, and 17 of the 077 patent, either literally or under the doctrine of equivalence. Yeah. Well, then those are the only claims that are being tried against Domino's. Right. But that doesn't mean that they weren't previously asserted. It doesn't matter if they weren't previously asserted. Because as the case progressed, they weren't dropped. They had to have been. Otherwise, they'd be identified in what the court's trying. But is it not the case that the local rule said you can only assert five claims? It's not the local rules. It was the court's order. The court's order said you can only assert five. Said you can only assert five. So these are the only five asserted. That means the rest were not asserted at that point in time. Claims can be dropped in a litigation. There's times where a complaint says at least claim one, and the first infringement contention show 30 claims, and then by the time it goes to trial, there's only five being asserted, and then they might try two or three at trial. But here, the asserted claims are defined. One, six, nine, 13, and 17. That's it. There's only five asserted claims against Domino's of the 077 patent. Those are the ones that, on page 2196, which you referred to previously, you reference the claims infringed. And this is based on the fact that the court has limited you to five. And then you say Domino's infringes at least the foregoing claims that you've been required to select, and Amaranth reserves the right to assert additional and or different claims in the future by court order in amended infringement contentions or as otherwise, right? You have to look at the date of this document. The date of this document is earlier on in the case. So while this goes with claims being asserted and then narrowed as the case progressed. So that goes to what I was saying before. If you have a claim that's asserted at the beginning and that's no longer asserted at the end, there's no subject matter jurisdiction over it because there's no case for controversy. So here, I don't think that's the law. I mean, I don't think that's what FOX stands for. FOX stands for the proposition that under the circumstances of that case, the district court could conclude that the allegations were withdrawn. In other words, no longer asserting infringement of those claims. It wasn't a situation where the local rule or the court's order limited the number of claims. In Amaranth's infringement contentions, it's at KBPX 2196, it's 16913 and 17. Again, those are the only ones charted for infringement. So that shows which claims were asserted. And then in the briefing to the district court at APPX 10258. So suppose you have a situation in which a patentee writes a letter to a claim infringer saying, you've infringed six claims here. And then when the suit is brought, they only assert three. There's no subject matter jurisdiction over the other three? No, there are not. And that patent owner, if that case goes to trial, loses the ability to assert those other three because they should have been brought at the time of the three. All you're saying is that you can't have a controversy except by suing and that's not the law. Well, what I'm saying is that if you try three cases, you then can't go back and say I'm now asserting these other three. So if you are in court and you say I'm asserting claims one through three and at trial you say here are the asserted claims one through three, as a patent owner, you just lost the ability to say, well, I also asserted four through six. We do have cases, don't we, in which case a controversy was found because somebody wrote a letter saying you infringed X number of claims of the patent. In those cases. Without bringing suit, right? In those cases. Isn't that correct? Your Honor, while there are cases that talk about unasserted claims and having, I shouldn't say unasserted claims, saying at least claim one and then invalidating an entire patent. You did not answer my question. Is it not the case that we have situations where we have found a case of controversy even though the patent owner didn't bring suit but just sent a letter saying you infringed such and such claims of our patent? I'm not aware of that unless you're talking about a declaratory judgment action in which the person, well, then the person receiving the letter said here are the claims that you asserted and the patent owner did not say no, I'm limiting my claims to these specific sets of claims. So where the patent owner does not limit the claims to be asserted, you are absolutely right and the court can invalidate an entire patent. But where, according to Fox Group v. Cree, Allergan v. Sandoz, Plantonics v. Alleth, and even in Inotherapeutics v. Praxart from August 27th, where the patent owner has restricted the claims that are asserted, there is no subject matter jurisdiction over those unasserted claims. In Fox Group, there are only two claims, one in 19 rights, that were asserted against them, that were ever asserted against them. We were dealing with the same set of claims, right, throughout. It wasn't a situation such as this where you started with an additional set of claims and were compelled to limit your assertions to five, right? I think that is correct. But I think Allergan and Plantronics dealt with the situation where claims were narrowed and they changed these sort of claims by the time the case was tried or the motion was tried. Okay. I'm in my rebuttal. Not to belabor the point too much, but part of the confusion is attributed to sentences like, Amaranth filed a complaint against several defendants asserting infringement of two patents. This is from your brief. You don't infringe a patent. You infringe claims of a patent. So when you use the phrase infringement of two patents, it creates enormous confusion as to what it is you're actually stating. I suggest that for future reference. All right. Thank you, Your Honor. Good morning and may it please the Court. My name is Frank Angelari for Domino's. Would you like me to start on the issue that you were discussing? Yes, that's the only thing your friend has covered, so I think it's appropriate for you to deal with that issue. Obviously, we have questions. The only thing that I would add to the record that was developed in my colleague's portion of the proceeding, I think there are two important points, and the most important of which is that Amaranth put all the claims in play in their supplemental brief. So Domino's filed a declaratory judgment. What about claims 4, 5, and 14? Sure. Those were not in the original claims asserted, as you can see from 12-426. And the claims on their face seems a bit unlikely that they would apply to Domino's since they have to do with ticketing and reservations and things like that. Your Honor, I agree. When you were going through, I agree with the claim analysis that you did in the sense that those are the three claims that are in the judgment and were not asserted against Domino's. They shouldn't be there. I agree with that factually. Pardon? So they shouldn't be included. If we were to affirm the district court's determination, they should be extracted from this case. That's certainly one possible result, Your Honor. Are you conceding that point, or are you just saying it's a possibility? It's a possibility. And I would add, and I certainly understand that ruling. Why are you not conceding that? Pardon? Why are you not conceding that? I'll answer your question, Your Honor. The answer is simply this. In their supplemental brief, Amaranth put all of the claims in play. They affirmatively asked the district court to find all the claims patent eligible. Having done that, does Domino's agree with that? Absolutely not. So we certainly would dispute their request. So to that extent, those claims were in play. I don't agree with the case of controversy. I mean, they're bound by the case of controversy requirement just as you are. They can't ask for a determination of patent eligibility with respect to claims to which there's no controversy. And if we have that, of course, let's put it this way. If we know that those claims are never going to be asserted against us, then yes, then there's no case of controversy. That's not the standard. We know they're never going to be asserted against them. A case that gives us that is the standard. Well, I guess what I'm asking then, Your Honor, is to that extent, there is a case of controversy because we filed a declaratory judgment action on the claims, and they affirmatively asked the judge to find a claim patentable. I guess, in a sense, it turns on whether they're allowed to put that claim in play. So if they're allowed to ask the judge to— You're hurting yourself by making an untenable argument. Your Honor— I'm telling you. It doesn't—it is not of concern to Domino's in this appeal. Yes. Because the judge didn't find the patentable. If the judge had found the patentable, then we'd be having a different discussion. But yes, Your Honor. We do concede that those claims are not in play in this appeal. Okay. So what about your friend's argument with respect to the remainder, other than five, that he was required to limit his assertions to? Why did those get covered under Fox Group and the other cases he cites? I think it's the same analysis from our perspective. They're not asserted against us. I'm not sure whether the pretrial order was ever entered. And it comes down to whether, I guess, Domino's has assurance that they're out of the case. They were pled against us. If they're formally and fully withdrawn forever in the case, then the same case— Well, they weren't formally and forever withdrawn. Well, that's the problem. So that's where the analysis is different. And so to that extent, Domino's does have risk, if you will, in this present case for those claims that were asserted initially but then not asserted because of the rule. What happens—I mean, I know there are a lot of district court judges that force you to limit the assertions. So what would happen if this case didn't go down on summary judgment? So the district court has limited them to five. And let's assume they lose that at the end. And there's final judgment. Is that judgment just with respect to those five? But what happens to the other claims that have never been formally withdrawn? Well, Your Honor, this is a very sort of broad statement. And my reaction is that a district judge would not have authority to essentially substantively limit, if you will, or permanently limit a patent owner's right to— I mean, that happens all the time. Well, that's what I'm asking you. I just have never had a case that's involved how things turn out. I haven't either, Your Honor, which is why I'm answering in some respects at a theoretical level. But I don't see how a district judge has authority to essentially take away all but five of your patent claims. But I haven't researched the issue. And it's a very practical issue in the sense that it happens all the time. I'm not aware of cases where it was appealed, as Your Honor described, where somebody presented five. Well, if the claims are still alive, if we get to the end of the day and there's final judgment and we've adjudicated these five claims, I mean, the answer may be you just don't know. What happens to the others? Are they automatically included? Or does the judge tell the patent owner to withdraw those claims, save them for another day? I don't know how that plays out. I don't know how that plays out. I do think—yes, I don't know. But there was a counterclaim here, right? There was a counterclaim here, yes. Right. And the counterclaim wasn't limited to the five claims, right? That's correct. Well, the counterclaim was the entire patent. Did the local rules apply? I mean, whatever was here, was it the local rule that the judge relied on or just his own authority to limit this to five? Does the local rule give him the authority to limit it, talk about five limiting it? I don't know the answer to that question, Your Honor, and I can ask my colleague who was more involved in the pretrial phase. Well, either way, nothing—the district court did not impose the same limitation on your counterclaims, right? He didn't say, okay, Anne, here's my order. You, patent owner, are limited to these five claims asserted, and you, infringer, alleged infringer, are limited to these. That's true. I mean, I suppose the judge, just thinking it through, may have thought that by limiting the plaintiff to five asserted claims at trial that there was an implicit limitation of those five claims on the defense or invalidity side. Well, apparently not, since he entered a judgment with respect to the other claims. Well, and I believe, Your Honor, he was taking a practical approach because he had—and I know you didn't like it and you said I was hurting my argument, but— I was talking about the three claims that weren't originally asserted. Sure. We have—that's off the table now. You've agreed that the judgment has to be corrected to eliminate those three claims. We're talking about the claims other than the five that were the subject of the summary judgment motion, which were the subject of your counterclaim and which the judge invalidated and which were originally asserted against you. Correct. I don't—I want to make sure I know your question before I answer it. The question is, were you limited by his order in seeking to invalidate those other claims which were originally asserted? I don't believe so because of the counterclaim and because of the original assertion. And I was going down a different path with you with respect to when I said the judge took a practical approach, but I think that those claims were in play. Does the court have any other questions? No. Thank you. Your Honor, I'd like to briefly discuss the unasserted claims and then go with the Ninth Circuit law issue with the remaining time. One of the issues with the district court's ruling is you had Pizza Hut's motion that sought to invalidate the asserted claims and they were defined. Domino's Joinder motion at APPX 1020—204 to 206. 10204 to 10206. Sorry, wrong. Sorry. They sought Joinder. And the claims that were asserted against Domino's in the contentions were those five. And those were the same five that were part of their Joinder motion. Sorry, it goes to APPX 10212. 10212. Nowhere does the Joinder motion raise the additional claims that Judge Sobral invalidated. And Amaranth was not put on notice that claims beyond the five asserted against Domino's were at issue. So there's a procedural problem there in the district court. Because if you notice in their Joinder motion it says, we seek to join Pizza Hut's motion. Again, Pizza Hut defined the asserted claims as five asserted claims to be invalid. And then there's footnote one on APPX 10212 where it just mentions claim nine. There's no other claims that are— I've got to tell you, and maybe this is not on you because I know our rules and we try to limit people to what they can and cannot put in the appendix. But just for your own takeaway, it's really impossible for us, for me, to comprehend all of these documents when there's an excerpt of two pages from a document without any dates on it or anything I can discern. We've got 211 and 212. On the bottom it says a memorandum. I don't know where this is, who filed it, when it was filed, in the context of everything going on. It's very hard to follow. So that, if you go to APPX 10204, that's the cover page. There's also the ECF notice at the top of the page, or the NEF notice, filed 8-28-18. And the import of this document, I mean, they included all these claims except for the three that Judge Dyke has called out in their counterclaims, right? In their counterclaims, it did. But then in their invalidity contentions, with their expert report, it was limited to five. There were no more in their expert report. Well, that's because you were limited to five and being asserted, right? But that also goes to, if they're seeking to invalidate more than five claims, their expert report should cover more than five claims. Otherwise, there's no arguments made as to their invalidity. As I understand what you're now saying, is you're not addressing the case or controversy point. You're addressing a different argument, which is procedurally, you weren't put on notice that these other claims were at issue under the counterclaim. I'm making that argument during this portion of my oral argument. It's brief, but yes, because we previously discussed the whole case or controversy. Now I'm saying there was no notice to Amaranth that the other claims were at issue. You did not raise that in your opening argument, which is a bit unfair to your opponent. Well, I did say that the court invalidated nine unasserted claims. So then, Your Honor, I understand you asked questions, but when I'm answering questions, it also takes me off of what I would have also liked to discuss. So, for example, the district court found that the claims were routine and conventional, and in doing so, it had to make a factual determination based on the record before it, and Ninth Circuit law says summary judgment with a disputed factual record should not and cannot be granted.  That's an argument you didn't address in your opening argument. It wasn't addressed in the opposing argument by the other side, and now you're raising it for the first time, and you're rebuttal. I did. When I did my opening statement, I said the court— Well, you tried to raise something about the summary judgment on the fact that there were factual issues on the inventive stuff, but we cut you off. Right. I did say, and I can read it back. I said, second, it violated Ninth Circuit law as an animal legal defense— And then we proceeded to take one piece of your argument, not that one, and ask you questions. So, in the record before the court, there was a declaration from a person named Mr. Dito who worked at Microsoft at the time, who knew what Windows CE did and the technology. There was then an expert report submitted by Dr. Shamos who opined on the state-of-the-art, tied the factual record to claim elements, and all of that was disregarded by the district court, and it also showed that there was a factual dispute regarding what was routine and conventional. Okay. You've exceeded your time limit. Case is submitted. We thank both sides.